1   Daniel L. Germain (Bar No. 143334)
    Rosman & Germain LLP
2   16311 Ventura Blvd., Suite 1200
    Encino, CA  91436-2152
3   Telephone: (818) 788-0877
    Facsimile: (818) 788-0885
4
    Eric L. Zagar (Bar No. 250519)
5   Tara P. Kao
    BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP
6   280 King of Prussia Road
    Radnor, PA  19087
7   Telephone: (610) 667-7706
    Facsimile: (610) 667-7056
8
      -and-
9
    Nichole T. Browning (Bar No. 251937)
10  580 California Street, Suite 1750
    San Francisco, CA  94104
11  Telephone: (415) 400-3000
    Facsimile: (415) 400-3001
12
13  *Attorneys for Plaintiff*

14              **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16
17  DAVID HUGHES, Derivatively on
    Behalf of Nominal Defendant          Case No.
18  BIDZ.COM, INC.,
                                          **CV09-06038** *PA*
19                         Plaintiff,
                                          **VERIFIED DERIVATIVE**
20          v.                            **COMPLAINT**   *VBKx*

21  DAVID ZINBERG, CLAUDIA LIU,
    LAWRENCE KONG, LEON
22  KUPERMAN, PETER G. HANELT,            **JURY TRIAL DEMANDED**
    GARRY Y. ITKIN and MAN JIT
23  SINGH,

24                         Defendants,

25          and

26  BIDZ.COM, INC.

27                  Nominal Defendant.

28
    ─────────────────────────────────────────
    VERIFIED DERIVATIVE COMPLAINT

Plaintiff, David Hughes, by the undersigned attorneys, submits this Verified Derivative Complaint (the "Complaint") against the defendants named herein.

### NATURE OF THE ACTION

1.      This is a shareholder's derivative action brought for the benefit of nominal defendant Bidz.com, Inc. ("Bidz" or the "Company") against the members of its Board of Directors (the "Board") and certain executive officers seeking to remedy defendants' breaches of fiduciary duties.

2.      The Individual Defendants (defined herein) breached their fiduciary duties by knowingly causing the Company to, among other things, give false appraisal prices for its auction items and engage in the illegal practice of "shill bidding" in order to artificially raise the auction prices of its products.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.   This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a).   This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

4.      Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district.   One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

### PARTIES

5.      Plaintiff David Hughes was a shareholder of nominal defendant Bidz at the time of the wrongdoing alleged herein and has been a shareholder of Bidz continuously since that time.  Plaintiff is a citizen of New York.

6.      Nominal defendant Bidz is a Delaware corporation with its principal executive offices located at 3562 Eastham Drive, Culver City, California 90232. According to its public filings, Bidz is an online retailer of jewelry, offering its products through interactive auctions.

7.      Defendant David Zinberg ("Zinberg") is the Company's founder, and has served as the Company's Chief Executive Officer ("CEO"), President and Chairman of the Board since November 1998.  Zinberg previously served as the Company's Corporate Secretary from 1998 until March 2001.  For Fiscal Years 2007 and 2008, Zinberg received the following compensation: salary of $181,250 and $241,667, respectively; bonus of $0 and $169,360, respectively; all other compensation of $19,994 and $22,407, respectively; total compensation of $201,244 and $433,434, respectively.  Zinberg is a citizen of California.

8.      Defendant Claudia Liu ("Liu") serves as the Company's Chief Operating Officer ("COO").   Previously, Liu served as the Company's Vice President of Operations.   For Fiscal Years 2007 and 2008, Liu received the following compensation: salary of $200,000 and $200,000, respectively; bonus of $287,700 and $237,600, respectively; option awards of $125,643 and $68,063, respectively; all other compensation of $15,271 and $18,785, respectively; total compensation of $628,614 and $524,448, respectively.  Liu is a citizen of California.

9.      Defendant Lawrence Kong ("Kong") has served as the Company's Chief Financial Officer ("CFO") since January 2, 2001, has been a member of the Board since July 2003 and has served as Treasurer and Secretary since March 2006.  Kong is the husband of defendant Liu.  For Fiscal Years 2007 and 2008, Kong received the following compensation: salary of $235,000 and $235,000, respectively; bonus of $338,048 and $302,930, respectively; option awards of $224,330 and $182,413, respectively; all other compensation of $16,828 and $23,320, respectively; total compensation of $814,205 and $743,663, respectively.   Kong is a citizen of California.

10.     Defendant Leon Kuperman ("Kuperman") has served as Bidz's Chief Technology Officer ("CTO") since January 2007 and President since November 2008.   For Fiscal Years 2007 and 2008, Kuperman received the following compensation: salary of $283,064 and $300,000, respectively; bonus of $90,000 and $90,000, respectively; option awards of $121,861 and $28,003, respectively; all other compensation of $774 and $6,411, respectively; total compensation of $495,699 and $424,414, respectively.   Kuperman is a citizen of California.

11.     Defendant Peter G. Hanelt ("Hanelt") has served as a director of Bidz since February 2006.   Hanelt currently serves as chair of the Company's Nominating and Corporate Governance Committee and Audit Committee, and is a member of the Company's Compensation Committee.   Hanelt is a citizen of California.

12.     Defendant Garry Y. Itkin ("Itkin") has served as a director of Bidz since May 2007, and previously served as a director from July 2003 until December 2006. Itkin previously served as the Company's acting CFO from February 1999 until 2000.   Itkin is currently a member of the Company's Audit Committee, Compensation Committee and Nominating and Corporate Governance Committee. Itkin is a citizen of California.

13.     Defendant Man Jit Singh ("Singh") has served as a director of Bidz since February 2006.   Singh currently serves as chair of the Company's Compensation Committee, and is a member of the Company's Audit Committee and Nominating and Corporate Governance Committee.   Singh is a citizen of California.

14.     Collectively, defendants Zinberg, Liu, Kong, Hanelt, Itkin and Singh will be referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

15.     By reason of their positions as officers, directors, and/or fiduciaries of Bidz and because of their ability to control the business and corporate affairs of Bidz, the Individual Defendants owed Bidz and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability

to control and manage Bidz in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Bidz and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Bidz and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

16.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Bidz, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial, and directorial positions with Bidz, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

17.     To discharge their duties, the officers and directors of Bidz were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Bidz were required to, among other things:

a.     exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

b.     exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

c.     when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence; and

d.     refrain from acting upon material inside corporate information to benefit themselves.

VERIFIED DERIVATIVE COMPLAINT                                                                   - 4 -

18. The Charter of the Audit Committee of the Board of Directors states that some of the "principal functions" of the committee are to "oversee the accounting and financial reporting process of the Company and the audits of the financial statements of the Company," to "review the Company's internal controls" and to discuss with counsel any legal matters "brought to the Committee's attention that could reasonably be expected to have a material impact on the Company's financial statements."

19. Consequently, Hanelt, Itkin and Singh, who were members of the Audit Committee, had the duty and obligation to ensure that Bidz's company model and financial statements were not based upon shill bidding.

## FACTUAL ALLEGATIONS

### The Individual Defendants' Improper Practices

20. In 1998, Bidz was founded with the goal of selling jewelry and other products online through interactive auctions. In contrast to other online auction sites, Bidz sells its own merchandise, as opposed to that of independent sellers.

21. Bidz's appraiser for its jewelry is American International Gemologists ("AIG"). According to certain AIG statements made to the media, AIG does not physically inspect every item that it appraises, in contravention of standard industry practice.

22. Bidz's auditors are Stonefield Johnson, Inc. ("Stonefield"). Stonefield has been harshly criticized by the Public Company Accounting Oversight Board ("PCAOB"). Specifically, the PCAOB released a report on March 14, 2007 stating that five out of thirteen of Stonefield's audits "included deficiencies of such significance that it appeared to the inspection team that the Firm did not obtain sufficient competent evidential matter to support its opinion on the issuer's financial statements."

23. Bidz continues to deal regularly with AIG and Stonefield.

24.    Shill bidding (also known as bid rigging or bid shilling) has been defined by Bidz's own Glossary of Terms as "[b]ogus bidding by an accomplice of the seller with the purpose of raising the price of an item." *See* http://www.bidz.com/ht/help?page=glossary.   Bidz claims that shill bidding is prohibited and does not exist on the Company's website.  The Company states, "You are strictly prohibited from placing bids or causing bids to be placed on any Product for the purpose of artificially increasing or otherwise manipulating the bidding process on Bidz.com or the bid price of any Product listed on the Site, or influencing user behavior on Bidz.com." *See* http://www.bidz.com/ht/help?page=terms.

25.    Bidz has, with the knowledge and approval of the Individual Defendants, in fact actively engaged in shill bidding for years, despite the Company's assertions to the contrary.

26.    Specifically, each of the Individual Defendants knew, but did not disclose to the market, that:

a.    The Company was actively engaging in shill bidding in an attempt to artificially drive up the prices of its items;

b.    All of the televisions auctioned by the Company over a three month period were sold by Clear Solution Partners, a company co-founded by Bidz's co-founder Matthew Mills;

c.    Most of the televisions sold over a period of three months were bid on hundreds of times by the same three bidders, and many sold for well above their true market value;

d.    The Company was dishonest with respect to the "appraised value" of the jewelry offered at auction, and was in fact using AIG Labs to over-value low priced jewelry, which would then be offered to the public at artificially inflated values;

e.    Bidz lacked adequate internal controls;

f.    Bidz's deceptive business practices were unsustainable and would eventually be discovered;

g.    When the Company's continuing deceptive business practices were disclosed, the price of Bidz common stock would fall significantly.

VERIFIED DERIVATIVE COMPLAINT                                                          - 6 -

1    27.    The Individual Defendants at all times had knowledge of the deceptive

2  practices of Company.   Bidz's practice of shill bidding and artificial appraisals

3  formed an absolutely essential part of the Company's true business model, and was

4  well known among Company insiders, including the Individual Defendants.

5                **Revelation of Individual Defendants' Misconduct**

6    28.    On November 26, 2007, CitronResearch published an article entitled

7  "Citron Adds Some Color and Clarity to Bidz.com."   The article, in relevant part,

8  stated:

9           Bidz.com is an online auction provider of off price jewelry
           and second tier accessories. What makes their model
10          unique is that everything is sold via auction. Yet, the
           auctions are not third party auctions as facilitated by Ebay,
11          rather they are auctions that are controlled by the company.
           In this report, Citron will expose what we believe to be
12          many red flags at BIDZ. Citron will make a few
           comparisons to previous reports written on other
13          companies as the issues at BIDZ seem to closely mirror
           issues we have discussed in the past.
14
                         *       *       *
15
           ***BIDZ largest supplier for years has been LA Jewelry,***
16          ***owned and operated by Saied Aframian, who also***
           ***happens to be one of BIDZ largest shareholders.*** Not
17          surprisingly, LA Jewelry is also BIDZ largest creditor, and
           a large participant in BIDZ co-op advertising program.
18          These "related party" transactions are all over BIDZ
           financials including:
19
           •  Over $5.3m accounts payables to a related party
20             (nearly 20% of AP)

21          •  Purchase of 11.6% of its merchandise from a related
22             party

           •  Participation in co-op marketing (12%) by related
23             party

24          •  Guarantee agreement with the same party related for
25             "minimum profit" on inventory purchased from the
               party.

26          •  The related party owns 1,228,000 shares of BIDZ's
27             stock.

           ***Saied Aframian is a convicted felon and has served time***
28          ***in the Federal System for fencing stolen goods. Not just***

VERIFIED DERIVATIVE COMPLAINT                                      - 7 -

*petty crime either, but for being the prime fence for a multi-million dollar nationwide ring of stolen watches and jewelry.*

We are not suggesting that Bidz sells stolen goods; rather we are observing the background of some of the individuals behind BIDZ who are most responsible for its reported profits. *The question is whether all these related party transactions cast reasonable doubt over BIDZ reported financials as a fair reflection of the health of the business.*

\*      \*      \*

*Citron believes that the company is not being forthright with their customers when it comes to "retail value" or "appraised value". All of the jewelry from BIDZ shows an appraisal from AIG Labs.* This appraisal makes consumers feel as if they are getting a good deal on a credible piece of jewelry that might have a decent resale value. Going to the website of AIG we see their name on a big building, which conveys an illusion of credibility.

*Citron paid a visit to AIG labs and an illusion it is. There is no name on the building (except in Photoshop…). As a matter of fact, the only signage they have is a white piece of paper on the front door to identify them. It appears to Citron that AIG is more of an "appraisal mill," that enables Bidz.com to sell low priced items to an unknowing public.* [Emphasis added.]

29.    Then, on November 28, 2007, CitronResearch followed up with an article entitled "Citron Research Comments on BIDZ.com Part II."  The article stated, in relevant part:

Citron Research believes the bidding process at Bidz.com leaves a lot of unanswered questions. While Citron does find the Bidz site entertaining with a unique interface, they have much to prove before it can be anointed with the big earnings multiples associated with proven business models. This report will outline some of the obvious bidding irregularities that we have observed on the Bidz website.

This report will not be a refutation to the conference call and will not address any new issues.

Let us offer one important correction. In the initial report we stated that CEO Zinberg pays himself 30,000 shares per month. This was not correct. He has been selling 30,000 shares per month from his own holdings. Mr. Zinberg stated during yesterday's conference call that he has reduced that number to 10,000 shares per month; as of today, there has been no public filing of this change yet.

*One common complaint that Citron observed in customer postings was shill bidding. This led us to do our own homework. Citron focuses on presenting public domain information. Therefore, when we suggested shill bidding, the investing public ran with the ball and found the same problems on the Bidz website that were found by Citron. As evident in yesterday's conference call investors have already seen these auction items: $6,000 flashlight/TV combo . . . $11,000 Television*

*The problem is still ongoing as we see in the live auction for a television with an MSRP of $1,499 yet the current bid on the television as of publication is $2,776.*

In an informal study, Citron offers the linked table, which outlines not only the obvious irregular bidding above, but also a pattern in the auction *of over 30 TV's over more than 3 months. Most of these TV's are bid on hundreds of times by the same three bidders.*

*What makes this attached spreadsheet so interesting is that all of these televisions were sold by Clear Solution Partners. The owner of Clear Solution Partners is Bidz.com co-founder Matthew Mills.* Not only is he the co-founder and vendor of these televisions, he has also been an outspoken proponent of the stock as evident in the Barron's Blog.

The hundreds of unique bidders over $500,000 for the big yellow diamond ring on BIDZ homepage has now been the topic of much discussion and there is no need to restate those questions. *Citron notes that BIDZ itself stated in the conference call that it does not know whether bidders are bona fide until after an auction closes.* Therefore, Citron cannot prove that the bidding on any jewelry is fake either. Jewelry is an item that thwarts direct comparison pricing, especially on the internet.

The question that investors are left with is: Are the patterns of bidding on the televisions any indication of patterns of bidding on jewelry? *Do the hundreds of repetitive bids on the TV's (often by the same bidder on separate auctions at nearly the same second) represent flying fingers of a rogue actor, or a feature of the auction software that only company insiders know about?*

Bidz.com is in need of a system that allows for more transparency of the Bidz and the integrity that comes from unedited consumer feedback within their own site. [Emphasis added.]

---

VERIFIED DERIVATIVE COMPLAINT

1    30.    As known by the Individual Defendants, their illicit and deceptive

2  business practices were unsustainable.  As the truth emerged about Bidz's auction

3  bidding process, Bidz common stock value dropped substantially.

4    31.    On September 1, 2008, Barron's published an article entitled "Putting

5  Bidz.com Shares on Sale."   The article contained numerous revelations about

6  Defendant Zinberg's contacts with questionable individuals, and stated, in relevant

7  part:

8           The discount on BIDZ shares (ticker: BIDZ) may also have
            something to do with the impressive array of fences and
            violent felons with whom Zinberg has been in business in
9           the past two decades. The 50-year-old chief executive has
            no criminal record, but a number of his partners and key
10          employees have startling rap sheets...and added arrests and
            convictions to those records while working with Zinberg.

11

12          The jewelry dot-com may be small carat, with a market
            capitalization of just $207 million, but it catches the eye.
13          The company did not make Zinberg available to *Barron's*,
            but it says Zinberg didn't know of his associates' priors.
14          BIDZ just settled a suit in which Cartier accused BIDZ and
            Zinberg of hawking counterfeits of its trademark "tank"
15          wristwatch. A vice president with a criminal record who
            helped BIDZ auction the ZIL limousine once used by
16          Soviet party boss Yuri Andropov is no longer with the
            company. "There's nobody in the company today that has a
17          criminal record," says Vice President Leon Kuperman. "It's
            not something that we have to worry about at this point."

18          Discussions about Zinberg's associates appeared on blogs
            as long as six months ago (see blogs.barrons.com). But
19          Kuperman says the company only recently dug into the
            allegations after receiving an anonymous letter to its board.
20          Just last Wednesday, he says, BIDZ first saw
            documentation alleging that *co-founder and director*
21          *Garry Itkin had run an illegal strip club on Sunset*
            *Boulevard, while also serving as BIDZ's chief financial*
22          *officer in 1999.* Itkin's alleged partner in the Sunset Strip
            club was *Oleg Khersonsky, the licensed agent for several*
23          *of Zinberg's pawn shops, who was arrested for assault*
            *with a deadly weapon and also for "oral copulation with*
24          *a person under 14 through force or fear."*

25          Kuperman also says BIDZ just discovered last week a 1998
            Los Angeles small-claims case in which *Zinberg was*
26          *named as a defendant alongside a shoe-business partner*
            *named Sergey Proshak, whose felonies include failure to*
27          *register as a sex offender, and Tommy Gambino, a*
            *reputed underboss of the Los Angeles mafia who*
28          *precipitated a Clinton-era scandal by paying presidential*

*stepbrother Roger Clinton to lobby, unsuccessfully, for a commutation of a 45-year sentence Gambino's father was serving for heroin trafficking.*

Friday, the company's public-relations consultant Rich Layne said that BIDZ director Itkin denies he was an owner of the strip club. Itkin was merely a financial adviser to Khersonsky, whom the articles of incorporation showed as sole shareholder. Any claims that the BIDZ co-founder was a strip-club owner are just short sellers' misinformation, said Layne. *But Itkin's denial Friday doesn't seem to square with his signature on an apparent agreement in which he and Khersonsky sold their equity interests in April 2000 for $422,000 to a recent émigré named Alex Brusilovski. Itkin's agreement was attached to a fraud suit that Brusilovski filed a year later in a Los Angeles state court, where he alleged that Itkin and Khersonsky failed to tell him that the strip club was losing its liquor license at the time of the sale because the owners failed to restrict the performances to "bikini dancing" and allowed nudity and simulated sexual intercourse.*

\*       \*       \*

*Zinberg's partner in a footwear business called Famous Shoe's Liquidator, Sergey Proshak, was a sex offender with prior arrests for assault and battery, and kidnapping. Vladislav Shulga, who worked for a Zinberg pawnshop, pleaded guilty to defrauding Medicare and paying kickbacks to doctors for business sent to a medical lab that Shulga owned. Another pawnshop employee named Steven Proshak owned a chain of 10 adult- day-care centers called Circle of Friends. Just last year, California suspended the centers amid a fraud investigation.*

\*       \*       \*

The striving auction site courted its customers with loss-leading offers in which BIDZ set its reserve price at just $1. When a lucky buyer got a Rolex watch for just a buck, BIDZ told the world. In a March 2002 publicity stunt, BIDZ auctioned off the ZIL-115 limousine that it said had belonged to Communist Party boss Andropov. The car was worth $350,000, boasted the company's vice president for development Igor Krakovsky. It went for $28,404.

*Krakovsky, by the way, had a prior conviction for receiving stolen property.* Not long before Zinberg hired him, Krakovsky had been the subject of a Los Angeles Times story about Passover observance in prison where he was doing time on a concealed weapons conviction. Kuperman, BIDZ's current development V.P., says BIDZ hadn't known the background of the executive, who left the

---

VERIFIED DERIVATIVE COMPLAINT                                                   - 11 -

1

2

company in 2003. "Back then we weren't doing background checks," Kuperman says.

\*     \*     \*

3

4

5

6

7

***Itkin's alleged ownership of the Sunset Strip club is more of a red flag, admitted Kuperman*** on Thursday. Zinberg knew nothing about that, Kuperman said. "He was very surprised when he reviewed the documents." Itkin denied on Friday the strip joint had been his. *Barron's* asked to speak to Itkin, but BIDZ said he was in Eastern Europe and unavailable.

8

9

10

11

12

13

"We have always held Garry's background in high esteem," Kuperman said Thursday. "He's an accomplished businessman." Indeed, the 47-year-old Itkin is a bigger fish than Zinberg. He got himself a $3.5 million mansion on Beverly Hills' Mulholland Drive after a decade as an executive of the LIVIZ vodka empire of Alexander Sabadash -- a billionaire who once tried to take control of a Russian paper mill with a private-assault team. Amid a Russian government probe of tax evasion and political corruption, Sabadash was forced from his position as a Russian legislator in 2006 and recently sued the U.S. government demanding they grant him citizenship. [Emphasis added.]

14

15

16

17

32.   Further, as a result of the hundreds of consumer complaints launched against Bidz (including allegations of poor quality items, mislabeled items, poor customer service, etc.), the Better Business Bureau ("BBB") has given Bidz an "F" rating.

18

19

20

33.   On or about February 23, 2009, the Company filed with the SEC a Form 8-K which revealed that the SEC had launched a formal investigation "relating to certain aspects of its inventory accounting practices."

21

22

23

24

25

26

34.   Thereafter, on or about May 14, 2009, the Company filed with the SEC a Form 8-K which disclosed the filing of a class action complaint on behalf of a class of investors who purchased the common stock of Bidz.com between August 13, 2007 to November 26, 2007 and also revealed that it had received a Civil Investigative Demand for information from the Federal Trade Commission relating to email marketing practices.

27

28

VERIFIED DERIVATIVE COMPLAINT

- 12 -

## The Individual Defendants' Insider Selling

35.     On August 16, 2007, Bidz filed with the SEC a Form 8-K. The Form 8-K was signed by Defendant Kong, and stated, in relevant part:

> Bidz.com, Inc. (NASDAQ: BIDZ), a leading online auctioneer of jewelry, today announced that its Chairman and Chief Executive Officer, *David Zinberg, adopted an individual pre-arranged stock trading plan in accordance with Rule 10b5-1 of the Securities and Exchange Act of 1934, as amended. Additionally, Mr. Zinberg's annual salary is voluntarily being reduced to $1 per year and he is not expected to receive any bonus or stock option grants.*
>
> Commenting on the announcement, Mr. Zinberg, Chairman and Chief Executive Officer said, "Bidz.com was founded in 1998 and we are extremely proud of our achievements over the last nine years. We have shareholders who have been supportive of our efforts from the beginning as well as many new shareholders who have invested in the Company now that we trade on the Nasdaq. I want to further align my interests with all of our investors and believe the best way to do so is to reduce my salary and tie my compensation to the performance of the Company which should result in share price appreciation."
>
> Mr. Zinberg continued, "We are very pleased with the momentum we are seeing in the business and particularly the leverage and scalability of our model. Bidz is a results driven company that is focused on profitable growth while continuing to innovate and deliver compelling customer value, and increasing market share. We look forward to delivering strong results that drive shareholder value over the coming quarters and years."
>
> Rule 10b5-1 allows officers and directors of public companies to adopt written pre-arranged stock trading plans when they are not in possession of material, nonpublic information. Once a Rule 10b5-1 trading plan is established, the insider retains no discretion over sales under the plan, and the trades are executed through a broker in accordance with the terms of the plan at later dates without regard to any subsequent material non-public information that the insider may receive.
>
> *Mr. Zinberg has not previously sold any shares of his holdings of Bidz.com's common stock or common stock underlying options.* The pre-arranged stock trading plan has been adopted to allow Mr. Zinberg to sell a portion of his shares of common stock (and/or shares of common stock acquired upon the exercise of vested stock options) over time as part of his long-term strategy for individual asset diversification and liquidity.

Sales under the plan are subject to certain prearranged minimum sale prices. Mr. Zinberg's plan provides for sales of up to 30,000 shares each month commencing August 15, 2007 (360,000 shares in the aggregate during the plan term). The plan terminates on July, 31, 2008 and shares not sold in a particular month may be carried over and sold in successive months during the term. [Emphasis added.]

36.   From August 15, 2007 to November 19, 2007, defendants Zinberg and Liu, based on their knowledge of material non-public information regarding the Company's improper auction practices, sold approximately 145,000 shares of Bidz common stock at an average selling price of $12.00, garnering total proceeds of $1,740,500, as follows:

| Name | Transaction Date | Number of Shares Sold | Stock Price | Total Proceeds |
|---|---|---|---|---|
| Zinberg | 08/15/07 | 13,899 | $8.18 | $114,000 |
| | 08/16/07 | 8,600 | $8.04 | $69,000 |
| | 08/17/07 | 7,501 | $8.04 | $60,000 |
| | 09/04/07 | 24,600 | $8.93 | $220,000 |
| | 09/05/07 | 5,400 | $8.60 | $46,000 |
| | 10/01/07 | 30,000 | $13.07 | $392,100 |
| Liu | 11/16/07 | 37,500 | $16.79 | $630,000 |
| | 11/19/07 | 17,500 | $17.82 | $312,000 |
| TOTAL | | 145,000 | | $1,740,500 |

37.   The stock sales described above were not part of any normal or regular pattern or practice of such sales by defendants Zinberg and Liu, but rather unusual in that:

a.   Defendant Zinberg entered into a 10b5-1 plan for the first time on August 16, 2007 (effective August 15, 2007) and had sold no shares of his stock prior to August 15, 2007.

b.   Defendant Liu had sold no shares of her stock prior to November 16, 2007.

c.   All of these defendants' stock sales occurred soon after the Company's positive press releases and reports, which made no mention of the Company's improper conduct, described *supra*.

38.     In order to present the appearance of propriety, all of the sales made by Defendant Zinberg listed above were conducted pursuant to the Rule 10b5-1 plan he entered into on August 16, 2007.  However, Defendant Zinberg entered the 10b5-1 plan while he was already in possession of material non-public information regarding Bidz's improper practices and conduct, such as shill bidding and false appraisals. Consequently, Defendant Zinberg's 10b5-1 plan was never valid.

39.     As defendants Zinberg and Liu expected, the revelations regarding the Company's dishonest auction practices had an immediate material effect on the price of Bidz common stock.  On the news of the Company's improper practices, the Company's stock plummeted from a closing price of $19.94 on November 23, 2007 to a low of $10.10 on November 28, 2007, a loss of almost 50 percent.

40.     Moreover, after Zinberg completed his insider sales and despite his efforts to defect any attention away from his insider sales by announcing that he would be reducing his salary to $1 and would not be receiving any future bonuses, in 2008, Zinberg did in fact receive total compensation of $433,434 which was more than double of his compensation received in 2007.

## Derivative And Demand Excused Allegations

41.     Plaintiff brings this action derivatively in the right and for the benefit of Bidz to redress breaches of fiduciary duty by and unjust enrichment of the Individual Defendants.

42.     Plaintiff will adequately and fairly represent the interests of Bidz and its shareholders in enforcing and prosecuting its rights.

43.     Plaintiff is an owner of Bidz common stock and was an owner of Bidz common stock at all times relevant to the Individual Defendants' wrongful course of conduct alleged herein.

44.     As a result of the facts set forth herein, Plaintiff has not made any demand on the Bidz Board of Directors to institute this action against the Individual Defendants.  Such demand would be a futile and useless act because the Board is

incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

45.    At the time this action was commenced, the Board consisted of five directors, defendants Zinberg, Kong, Hanelt, Itkin and Singh.  A majority of the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action for the following reasons:

    a.    In light of their knowledge of the ongoing deceptive business practices, defendants Zinberg, Kong, Hanelt, Itkin and Singh each face a substantial likelihood of being held liable for breaching their fiduciary duties, and therefore are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

    b.    Defendant Zinberg faces a substantial likelihood of being held liable for breaching his fiduciary duties of loyalty and good faith and violating California Corporations Code § 25402 by engaging in illegal insider trading of Bidz securities as alleged herein, and therefore is incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

    c.    Defendants Hanelt, Itkin and Singh compromise the Compensation Committee of the Board, with Singh serving as Chairman of the Compensation Committee.  According to the Company's Charter of the Compensation Committee of the Board of Directors, the Compensation Committee reviews and approves the "corporate goals and objectives relevant to the compensation" of the CEO and of the Executive Officers.  Accordingly, defendants Zinberg and Kong (CEO and CFO, respectively) are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action against defendants Hanelt, Itkin and Singh, who control their compensation as CEO and CFO.

    d.    Defendants Zinberg and Itkin have a long history of relationships with each other, both personal and professional.  For example, Zinberg and Itkin were CEO and CFO, respectively, of both Asset Lenders of America and Union Pawn Brokers, Inc. Additionally, both have served as Registered Agents for various business entities that have shared the same address.  For example, Zinberg served as the Registered Agent for Union Pawn Brokers, Inc., while Itkin served as the Registered Agent for AFB Trading One, Inc.  Union Pawn Brokers and AFB Trading One shared the same address.  Moreover, Zinberg's address, as Registered Agent for Union Pawn, is the same address as that of Olympic Lenders Collateral Leaders, Inc., for which Itkin is the Registered Agent. Due to their long history of personal and professional interconnecting relationships, defendants Zinberg and Itkin are incapable of disinterestedly and independently considering a

demand to commence and vigorously prosecute this action against each other;

e.   Defendant Kong is married to Defendant Liu, and both are former employees of JSL Foods, Inc. As a result of these longstanding personal and professional relationships, Kong is incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action against Liu;

f.   Defendant Itkin is the former CFO of Bidz. Currently, the SEC is looking into past accounting practices of the Company. Due to the possibility that Itkin will be held liable for the Company's past accounting practices, he is incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

g.   Defendants Hanelt, Itkin and Singh comprise the Audit Committee, with Hanelt serving as Chair of the Audit Committee. According to the Company's Charter of the Audit Committee, the Audit Committee is responsible for, among other things, overseeing the financial reporting processes of the Company, reviewing the Company's internal controls and ensuring that the Company abides by all relevant laws. Hanelt, Itkin and Singh knew that the Company's business model was based upon shill bidding, and that the practice was rampant throughout the Company. As a result, and due to the likelihood of being found liable for this, Hanelt, Itkin and Singh are incapable of disinterestedly and independently considering a demand to vigorously prosecute this action;

h.   The Company's improper practices were not, and could not have been, the result of an exercise of good faith business judgment. On the contrary, the improper practices were the result of bad faith conduct that is not protected by the business judgment rule.

## COUNT I

### AGAINST ALL INDIVIDUAL DEFENDANTS
### FOR BREACH OF FIDUCIARY DUTY OF GOOD FAITH

46.   Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

47.   As alleged herein, each of the Individual Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and, when put on notice of problems with the Company's business practices and operations, exercise good

VERIFIED DERIVATIVE COMPLAINT                                    - 17 -

faith in taking appropriate action to correct the misconduct and prevent its recurrence.

48.     The Individual Defendants knowingly implemented and engaged in the Company's improper business practices, breaching their fiduciary duties.

49.     Furthermore, despite their actual knowledge of the Company's improper business practices, the Individual Defendants made no effort to correct the problems or prevent their recurrence; thus, they abdicated their fiduciary duty of good faith.

50.     As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained damages, including, but not limited to, costs and expenses incurred with litigation associated with the Company's improper business practices, and loss of reputation and standing in the industry.

## COUNT II

### AGAINST DEFENDANTS ZINBERG AND LIU FOR BREACH OF FIDUCIARY DUTIES OF LOYALTY AND GOOD FAITH

51.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

52.     At the time of each of the stock sales set forth herein, defendants Zinberg and Liu knew, but did not disclose publicly, the material information regarding their illicit and deceptive business practices described herein.

53.     Each of these defendants sold Bidz common stock on the basis of and because of their knowledge of this material non-public information.

54.     At the time of their stock sales, defendants Zinberg and Liu knew that when the material information regarding their improper conduct at Bidz was publicly disclosed, the price of the Company's common stock would dramatically decrease. Defendants Zinberg's and Liu's sales of Bidz common stock based on their knowledge of this material non-public information were a breach of their fiduciary duties of loyalty and good faith.

VERIFIED DERIVATIVE COMPLAINT                                           - 18 -

55.     Since the use of the Company's proprietary information for their own gain constitutes a breach of their fiduciary duties, the Company is entitled to the imposition of a constructive trust on any proceeds defendants Zinberg and Liu thereby obtained.

## COUNT III

### AGAINST DEFENDANTS ZINBERG AND LIU FOR UNJUST ENRICHMENT

56.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

57.     Defendants Zinberg and Liu were unjustly enriched by their receipt of proceeds from their illegal sales of Bidz common stock, as alleged herein, and it would be unconscionable to allow them to retain the benefits of their illegal conduct.

58.     To remedy their unjust enrichment, the Court should order them to disgorge to the Company all proceeds derived from their illegal sales of Bidz common stock.

## COUNT IV

### AGAINST DEFENDANTS ZINBERG AND LIU FOR VIOLATION OF CALIFORNIA CORPORATION CODE § 25402

59.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

60.     Upon information and belief, Bidz has had at least five-hundred shareholders of record at all times relevant hereto.

61.     At the time that Defendants Zinberg and Liu sold their shares of the Company's common stock in California as set forth herein, by reason of their high executive and/or directorial positions with the Company, Defendants Zinberg and Liu had access to highly material information regarding the Company, including the information set forth herein regarding their illicit and deceptive business practices perpetrated at Bidz.

62.   At the time of such sales, that information was not generally available to the public or the securities markets. Had such information been generally available, it would have significantly reduced the market price of the Company's shares at that time.

63.   Defendants Zinberg and Liu, and each of them, had actual knowledge of material, adverse non-public information regarding the Company, and thus sold their shares of the Company's common stock in California in violation of California Corporations Code § 25402.

64.   Pursuant to California Corporations Code § 25502.5, Defendants Zinberg and Liu, and each of them, are liable to the Company for damages in an amount up to three times the difference between the price at which the stock was sold by these defendants, and each of them, and the market value which the stock would have had at the time of the sale if the information known to these defendants had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

WHEREFORE, Plaintiff demands judgment as follows:

A.   Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and violations of law;

B.   Imposing a constructive trust in favor of the Company for the amount of proceeds defendants Zinberg and Liu received from their sales of Bidz common stock alleged herein;

C.   Ordering defendants Zinberg and Liu to disgorge to the Company all proceeds derived from their sales of Bidz common stock alleged herein;

D.   Awarding the Company treble damages against Zinberg and Liu as provided by California Corporations Code § 25502.5;

E.   Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.   Granting such other and further relief as the Court deems just and proper.

1

Dated: August 17, 2009

ROSMAN & GERMAIN LLP

2

3

_____

4

Daniel L. Germain
16311 Ventura Blvd., Suite 1200
Encino, CA  91436-2152
Telephone: (818) 788-0877
Facsimile: (818) 788-0885

5

6

7

Eric L. Zagar
Tara P. Kao
BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

8

9

10

11

12

-and-

13

14

Nichole T. Browning
580 California Street, Suite 1750
San Francisco, CA  94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001
*Attorneys for Plaintiff*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED DERIVATIVE COMPLAINT

- 21 -

1

## JURY DEMAND

2   Plaintiff demands a trial by jury.

3   Dated: August 17, 2009                 ROSMAN & GERMAIN LLP

4

5

6                                          Daniel L. Germain
                                           16311 Ventura Blvd., Suite 1200
7                                          Encino, CA  91436-2152
                                           Telephone: (818) 788-0877
8                                          Facsimile: (818) 788-0885

9                                          Eric L. Zagar
                                           Tara P. Kao
10                                         BARROWAY TOPAZ KESSLER
                                           MELTZER & CHECK, LLP
11                                         280 King of Prussia Road
12                                         Radnor, PA 19087
                                           Telephone: (610) 667-7706
13                                         Facsimile: (610) 667-7056

14
                                                       -and-
15

16                                         Nichole T. Browning
                                           580 California Street, Suite 1750
17                                         San Francisco, CA  94104
18                                         Telephone: (415) 400-3000
                                           Facsimile: (415) 400-3001
19                                         *Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28

VERIFIED DERIVATIVE COMPLAINT                                        - 22 -

**VERIFICATION**

I, David Hughes, hereby verify that I have authorized the filing of the attached

Verified Shareholder Derivative Complaint, that I have reviewed the Complaint, and that

the facts therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

DATE: 7/27/09

David Hughes

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV09- 6038 PA (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Daniel L. Germain (Bar No. 143334)
Rosman & Germain LLP
16311 Ventura Blvd., Suite 1200
Encino, CA  91436-2152
Telephone: (818) 788-0877
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| David Hughes, Derivatively on Behalf of *Nominal* *Defendant* *Bidz.Com* *Inc.* <br> PLAINTIFF(S) <br> v. <br> David Zinberg, Claudia Liu, Lawrence Kong, Leon Kuperman, Peter G. Hanelt, Garry Y. Itkin, Man Jit Singh, and Bidz.com, Inc., <br><br> DEFENDANT(S). | CASE NUMBER <br><br> **CV09-06038** *PA* **VBKx** <br><br><br> **SUMMONS** |

TO:   DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Daniel L. Germain_____, whose address is _Rosman & Germain LLP, 16311 Ventura Blvd., Suite 1200, Encino, CA  91436-2152___.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __AUG 18 2009__

By: ___**AMY GRAGERA**_____
            Deputy Clerk

            (Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| David Hughes, Derivatively on behalf of Nominal Defendant Bidz.com, Inc. | David Zinberg, Claudia Liu, Lawrence Kong, Leon Kuperman, Peter G. Hanelt, Garry Y. Itkin, Man Jit Singh, and Bidz.com, Inc., |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Daniel L. Germain. Esq., Rosman & Germain LLP<br>16311 Ventura Blvd., Suite 1200<br>Encino, CA 91436 (818) 788-0877 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No  ☒ MONEY DEMANDED IN COMPLAINT: $ In excess of $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. section 1332(a) and 28 U.S.C. section 1367(a)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☒ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | | ☐ 220 Foreclosure | IMMIGRATION | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Detemi-nation Under Equal Access to Justice | | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | | ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | | ☐ 871 IRS-Third Party 26 USC 7609 |

**CV09-06038**

FOR OFFICE USE ONLY: Case Number: _____

### AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): Hassan v. Zinberg, CV-09-04984 CBM (FFMx)

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☑ A. Arise from the same or closely related transactions, happenings, or events; or
☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☑ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | New York |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, California | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, California | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date August 17, 2009

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |